UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order DENYING Motion for a Preliminary Injunction

Before the Court is Plaintiff TeleSign Corporation's motion for a preliminary injunction. Dkt. #23. After considering the moving, opposing, and reply papers submitted by the parties, the Court DENIES the motion.

I.  Background

    A.  The Technology at Issue

Plaintiff is "an industry leader in internet security and user authentication," whose products "give[] businesses the ability to connect a unique identity with every account to verify new registrations and authenticate users." *First Amended Complaint* ("*FAC*") ¶¶1, 3. In its FAC, Plaintiff brought claims against Defendant Twilio, Inc. related to the infringement of three patents. *See generally FAC*. The preliminary injunction motion, however, is limited to one of them—the '034 patent. *Mot.* 2–3.

Patent '034 is entitled "Process for Determining Characteristics of a Telephone Number." *Shamos Decl.*, Ex. C ["'034 Patent"] at 117. The patented process "may be used to prevent fraudulent or restricted access to a website or system." *Id.* (patent abstract). The focus here is on the '034 patent's first claim. *Mot.* 5. The elements of that claim are:

- A process for telephonically registering a user over one or more communication networks through determining characteristics of a telephone number, comprising the steps of:

    o  receiving a telephone number;

    o  electronically determining the type of phone, the phone carrier and geographic characteristics associated with the telephone number;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

- o connecting to a telephone associated with the telephone number through at least one of the communications networks;

- o communicating a verification message with the telephone over at least one of the communications networks;

- o registering the user through at least one of the communication networks based on the type of phone, the phone carrier, the geographic characteristics associated with the phone and the verification message.

*'034 Patent* at 132. In layman's terms, the patented method here helps reduce fraud in online registrations by adding to a registration process the step of determining characteristics of a phone number, and then factoring those characteristics, along with a verification message, into a decision about whether to register a particular user. *Mot.* 2–3. Plaintiff received the patent in May 2011. *'034 Patent* at 117. The '034 patented method is incorporated in Plaintiff's PhoneID technology. *Mot.* 1, 3.

Defendant is "a cloud communications company that offers 18 different messaging, voice, and communications products to its customers." *Schaffer Decl.* ¶¶3–4. Plaintiff's claims of infringement revolve around three of these products—Lookup, Authy, and Twilio SMS. *Mot.* 3, 5–10; *Opp.* 3–5. Lookup, released on March 31, 2015, is an application that allows users "to receive detailed information about a phone number." *Peale Decl.*, Ex. 1 ["Introducing Lookup Blog"] at 4. Its press release stated: "With Lookup, you can present your internal numbers in the most-local friendly manner, reduce spam and fraud, and know when you need to use voice instead of messaging." *Id.* Authy is a two-factor authentication service, referred to in the briefing as "2FA." *Mot.* 3; *Opp.* 4. Two-factor authentication services increase registration security by requiring two different forms of identification (e.g. providing a password and responding to a text message) at the time of registration. *Mot.* 3. Twilio SMS routes short message service ("SMS") text messages on behalf of Defendant's customers. *Schaffer Decl.* ¶24.

The alleged infringement is relatively straightforward. Plaintiff contends that Lookup, used in conjunction with Authy and/or Twilio SMS, can be used to duplicate the '034 patented process that is one of the key components of PhoneID. Plaintiff explains:

> Lookup is used to add a layer of protection on top of Defendant's [2FA] technology so that when a prospective user attempts to register with a website (for example), not only does he or she have to enter a code received in a Twilio text message (2FA), the user's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

phone number is evaluated by Lookup as a factor to consider when registering a user. This functionality is nearly identical to the functionality available with [Plaintiff]'s PhoneID and is covered by the '034 Patent."

*Mot.* 3.

    B.    Procedural History

Plaintiff filed sued against Defendant on April 30, 2015 for direct infringement of all three patents. Dkt. #1. Plaintiff contends that Defendant has known about the patents since at least this date. *FAC* ¶¶26, 29, 49, 52, 72, 75. On July 15, 2015, Plaintiff filed its FAC. Dkt. #13. The FAC included both direct and induced infringement claims for all three patents. *See generally FAC*.

On August 5, 2015, Plaintiff filed a motion for preliminary injunction relating to the '034 patent. Dkt. #23. One week later, Defendant filed motions to dismiss for improper venue, Dkt. #25, and failure to state a claim, Dkt. #27. The Court denied both motions to dismiss on October 16, 2015. Dkt. #75.

II.    Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation and internal quotation marks omitted). A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) an advancement of the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Although the rules for preliminary injunctions in patent cases are generally based on the rules of the home circuit, the Federal Circuit can create rules that are superseding. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988).

A preliminary injunction may also be appropriate "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the other *Winter* factors are met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (alteration and citation omitted) (allowing for a post-*Winter* "sliding scale" analysis in preliminary injunction inquiries where "the elements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another").[1]

III.    Discussion—The *Winter* Factors

   A.    Likelihood of Success on the Merits

Plaintiff has two theories of liability—direct infringement and induced infringement. *Mot.* 4. Plaintiff must show that it is more likely than not that it will succeed on the merits of one of these claims to satisfy this factor. *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012). The threshold question for either theory of liability is whether some actor (Defendant, its customers, or both) directly infringed the '034 patent. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Direct infringement requires appropriation or application of all elements of the patent claim at issue. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). The infringement must also be attributable to a single entity. *See Akamai Techns., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). This rule can be satisfied by showing that one entity directed and controlled another entity as part of the infringement. *See id.* For the reasons discussed below, the Court finds that Plaintiff has not shown that it is more likely than not that infringement has occurred.

Plaintiff's preliminary injunction motion bases its infringement theories on three main pieces of evidence. First, Defendant's website contains a tutorial entitled "Using Twilio SMS . . . To Build A Phone Verification System." *Peale Decl.*, Ex. 4 ["Phone System Blog"] at 19. This tutorial teaches how to build a verification system using text messaging to minimize fraud, spam, and mistakes to developers of applications that interact with phones. *Id.* This tutorial includes the creation of a registration button, teaches users how to receive phone numbers from end users and use SMS to verify numbers with a verification code, and notes the importance of properly formatting phone numbers. *Id.* at 19–20. Although formatting phone numbers is a capability of Lookup, *see Introducing Lookup Blog* at 1, this blog post was written over a year and a half before Lookup was announced, *Opp.* 5–6.

Plaintiff also cites to Lookup's webpage, which shows that Lookup is capable of gathering all of the types of phone characteristics used in the '034 patent's registration process.

---

[1]    Defendant argues that the "sliding scale" test has been overwhelming rejected in the Ninth Circuit post-*Winter*. *Opp.* 7. The Ninth Circuit, however, has repeatedly affirmed this test in recent years. *See, e.g.*, *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

*Peale Decl.*, Ex. 5 ["Lookup Webpage"] at 28. Finally, the Introducing Lookup blog states that Lookup's uses include "scrub[bing] out numbers with invalid formats," "increas[ing] the quality of consumer data gathered," and validating "the accuracy of data inputs." *Introducing Lookup Blog* at 4–5.[2]

Nothing in this evidence offers direct proof that Defendant or its customers implement, using Defendant's services, a registration system comprised of the three phone characteristics and a verification message. This, of course, is not inherently troubling because circumstantial evidence can be used to show that infringement likely occurred. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence."). Plaintiff argues that its evidence shows that infringement is likely because the tutorials and service descriptions could be combined to create a registration system that directly infringes the '034 patent. *Mot.* 5–10 (explaining that Defendant offers instructions about how to infringe each step of the '034 patent). But Defendant does not dispute, and in fact specifically acknowledges, that its services can be combined in an infringing way. *Opp.* 16 ("[Plaintiff]'s infringement theory is based on a guess that Twilio customers buy two services, combines them, and then uses them in a very specific way."). Thus, the question here is not whether Defendant's services could infringe the '034 patent, but rather whether it is more likely than not that Defendant's customers actually use Lookup, Authy, and/or Twilio SMS in such an infringing manner.

Plaintiff's arguments that Defendant and its customers are infringing are heavy on speculation and light on evidence. Plaintiff's infringement theory requires a critical leap—the Court would need to infer that Defendant's instructions about how to use its various services, as well as the descriptions of those services, would likely encourage customers to apply those services to a registration process in a way that mimics the patented method (i.e. infringe). But that leap would be in tension with case law holding that such evidence cannot alone establish infringement:

---

[2] After describing this evidence, Plaintiff wrote that the evidence is "just a sample of the tutorials, code samples, offers, and instructions that encourage others to use [Defendant]'s technology." *Mot.* 10. This suggests that other evidence existed at the time the motion was filed. No other evidence, however, was included with the motion. *See Peale Decl.* Plaintiff submitted a variety of new documents with its Reply. *See Peale Supp. Decl.* Although Central District of California Local Rule 7-10 allows the submission of new evidence on reply, the evidence should not be materials that should have been submitted with the original motion. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). The Court will therefore not consider any evidence of infringement that was available to Plaintiff at the time its motion was filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

It is well settled that excerpts from user manuals as evidence of underlying direct infringement by third parties of products that can be used in a non-infringing manner are by themselves insufficient to show the predicate acts necessary for inducement of infringement. *E–Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007). When manuals only teach "customers each step of the claimed method in isolation," but not "all the steps of the claimed method together," the manuals alone cannot support infringement. *Id.* at 1222. Such a manual does not show that all of the steps were performed together. Here, the operating systems, laptops, and accused features such as Spotlight, can be indisputably used in a non-infringing manner. The manual entries cited by Mirror Worlds do not directly instruct a user how to infringe. Instead, the manuals suggest searching Mail using Spotlight, but do not at the same time instruct a user to receive an e-mail (receive data units), send an e-mail or create a word document (generate data units), and display time-ordered search results (generating a sub-stream). Such instruction is found only elsewhere in the manuals, and separately. The manuals teach customers each step of the claimed method only in isolation and thus do not suffice under *E–Pass* for showing inducement of infringement.

*Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360–61 (Fed. Cir. 2012); *see also E-Pass*, 473 F.3d at 1222. Here, there is no doubt that Lookup, Authy, and Twilio SMS can be used in a non-infringing fashion, and Plaintiff does not show any manual or guide instructing users to perform all steps of the '034 patented method in conjunction. This evidence is insufficient to infer infringement.

In its Reply, Plaintiff offers a handful of additional arguments, none of which is persuasive. Plaintiff contends that an infringing purpose for the products should be inferred because the evidence shows that Defendant "cross-sells" Lookup and Authy. *Reply* 6–8; *Berkovitz Supp. Decl.* ¶¶3–4. In its Opposition, Defendant stated that 16 of the 800 customers who use Lookup also have access to Authy. *Opp.* 12 (citing *Schaffer Decl.* ¶20). Defendant's website advertises Lookup, Authy, and Twilio SMS on the same webpage, and Lookup is included in Defendant's flagship product, its application-programming interface ("API"). *Reply* 1, 6–8. But Defendant explicitly denied that it cross-sells Lookup and Authy or that its services are designed to compete with PhoneID, and explained that its cross-selling of Lookup and Twillio SMS is solely designed to improve messaging capabilities. *Schaffer Decl.* ¶¶18–19. None of this evidence suggests that customers more likely than not use Defendant's services in an infringing, as opposed to a non-infringing, manner.

Plaintiff next argues that, regardless of whether it is apparent from the face of the tutorials and product descriptions that infringement is encouraged, Defendant's customers would recognize that Defendant's services could be used to infringe PhoneID, and indeed would likely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

find that to be a prime function of the services. *Reply* 4–6 ("[Defendant] markets to a sophisticated software developer community that is unlikely to view [Defendant]'s products as so distinct and compartmentalized as [Defendant] claims."). In support, Plaintiff offers the declaration of Dr. Vernon Thomas Rhyne III, who states:

> In my opinion, one of the most logical ways for a [Defendant] customer to serve its customers, fight fraud, and perform input validation is to use Lookup during a customer-registration process. And, it would also be logical to use Lookup when sending SMS messages because, as shown below, the [Introducing Lookup] article actually refers to procedures for sending or avoiding sending SMS messages.

*Rhyne Decl.* ¶92.[3] Plaintiff also notes that multiple customers have brought up Defendant's services with Plaintiff's salespeople as possible alternatives. *Berkovitz Decl.* ¶¶42–44; *Berkovitz Supp. Decl.* ¶¶7–10.

Plaintiff has not met its evidentiary burden to show that sophisticated software developers would more likely than not use Defendant's services to infringe. Defendant's expert, Dr. Michael Shamos, stated that nothing in the Introducing Lookup Blog, the Lookup Webpage, or the Phone Verification Blog would signal that Defendant's customers would combine them to create an infringing registration system. *Shamos Decl.* ¶¶45–87. And the customer evidence, while perhaps indicating that Plaintiff and Defendant's products have some overlap, does not go so far as to suggest that Plaintiff's customers plan to use Defendant's services in place of Plaintiff's four-factor verification service. *See Apple Inc. v. Samsung Electronics Co.* ("*Apple II*"), 695 F.3d 1370, 1374–75 (Fed. Cir. 2012) (noting, in the context of the irreparable harm prong, that the relevant question is whether competition arises from the *infringing* aspects of the product at issue).

At bottom, Plaintiff has presented evidence that indicates that infringement is possible. But that is not the standard. Plaintiff must show that it is more likely than not that infringement has occurred. *See Revision Military*, 700 F.3d at 526. It has not done so. The Court therefore finds that Plaintiff does not satisfy the first *Winter* factor.[4]

    B.    <u>Irreparable Harm</u>

---

[3] Although the Court questions whether this report is really a *rebuttal* report, *see* footnote 2, *supra*, it will consider it in this Order.

[4] Because the Court finds that Plaintiff has failed to show the likelihood of succeeding on the merits for infringement, it does not address the likelihood of succeeding on the induced infringement claim or the validity of the '034 patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

"It is well established that as the party seeking emergency relief, [Plaintiff] must make a clear showing that it is at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury." *Apple II*, 695 F.3d at 1374 (internal quotation marks omitted). For the reasons discussed below, the Court does not believe that Plaintiff satisfies this factor.

### i. *Causal Nexus Requirement*

Irreparable injury requires "some causal nexus between [Defendants]'s infringement and the alleged harm to [Plaintiff]." *Apple, Inc. v. Samsung Electronics Co.* ("*Apple I*"), 678 F.3d 1314, 1324 (Fed. Cir. 2012). "The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason. For example, it ensures that an injunction is not entered on account of 'irreparable harm caused by otherwise lawful competition.'" *Apple Inc. v. Samsung Electronics Co.* ("*Apple IV*"), No. 2014-1802, 2015 WL 5449721, at *4 (Fed. Cir. Sept. 17, 2015) (quoting *Apple Inc. v. Samsung Electronics Co.* ("*Apple III*"), 735 F.3d 1352, 1361 (Fed. Cir. 2013)).

Plaintiff argues that a causal nexus exists because Defendant's sale of services that can mimic Plaintiff's patented technology has caused price erosion. *Mot.* 13–14; *Reply* 9; *see Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006) (explaining that price erosion can support irreparable injury). Plaintiff's Vice President, Darren Berkovitz, stated that Defendant has offered Lookup "at extremely low prices and, sometimes, for free." *Berkovitz Decl.* ¶37. He also stated that Plaintiff's customers have challenged the prices of both PhoneID and products sold in conjunction with PhoneID because the customers could get similar products from Defendant for a lower price. *Id.* ¶¶40, 42–45. He highlights one situation in which Plaintiff had to give a "substantial discount" to a customer leading to millions of dollars in lost revenue. *Id.* ¶¶44–45.

Plaintiff also argues that a causal nexus exists due to lost sales. *Mot.* 12–13; *Reply* 9–10; *see Apple IV*, 2015 WL 5449721, at *5 (analyzing lost sales as part of the causal-nexus analysis). Berkovitz stated that Plaintiff and Defendant compete over the same customers; in other words, sales to Defendant represent lost sales to Plaintiff. *Berkovtiz Decl.* ¶¶28–29, 31–33; *Berkovitz Supp. Decl.* ¶¶6–9, 13. He also explained that customers who purchase technology products like PhoneID or Lookup must integrate them into their systems, so customers tends to stick with one company after the initial sale. *Berkovtiz Decl.* ¶¶25–27. Plaintiff, moreover, often uses its PhoneID technology to springboard into sales of other technology to a client, meaning that the inability to sell PhoneID would cause lost sales for other products as well. *Id.* ¶¶22–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

Plaintiff points to the evidence that sixteen users of Lookup also use Authy as an example of customers that Plaintiff has lost to Defendant. *Reply* 10; *Berkovitz Supp. Decl.* ¶¶16–17.

Finally, Plaintiff argues that a causal nexus exists due to a loss of goodwill and the tarnishing of its reputation. *Mot.* 14; *Reply* 10–11; *see Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013) (finding reputational injury as support for irreparable harm); *accord Apple IV*, 2015 WL 5449721, at *17 (Reyna, J., concurring) ("Apple's reputation as an innovator is critical to its ability to compete against Samsung."). Berkovitz stated that Plaintiff's PhoneID technology has set it apart as an innovator and infringement by Defendant will damage Plaintiff's reputation as a market leader. *Berkovitz Decl.* ¶50; *see also Chapman Decl.* ¶¶79, 81–82. Expert Dr. Michael Chapman opined that the technology industry puts heavy emphasis on clientele, so the loss of a big name customer to Defendant would damage Plaintiff beyond pure lost revenue. *Chapman Decl.* ¶¶41–44, 81. Dr. Chapman also testified that PhoneID depends on a developing database of phone numbers, meaning that an increase in customers using PhoneID increases the utility of Plaintiff's product. *Id.* ¶¶27, 45, 83.

The Court has a number of problems with these arguments. As a threshold matter, the Court is troubled by Plaintiff's factual evidence, as it consists almost entirely of testimony from Plaintiff's vice president. *See Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. App'x 964, 979 (Fed. Cir. 2002) ("Premier's evidence of infringement here consists of nothing more than a conclusory assertion by its CEO Scibora and an equally conclusory letter by its patent counsel."). Other than some additional testimony from Dr. Chapman (which itself largely relies on Berkovitz), there is no other evidence of harm to Plaintiff.

More importantly, the testimony of Berkovitz and Dr. Chapman fails to adequately differentiate between harm arising from the sale of infringing products and harm arising generally from competition with Defendant. Plaintiff can only establish a causal nexus between its harm and Defendant's infringement if purchasing decisions are motivated by the infringing features. *See Apple IV*, 2015 WL 5449721, at *5 ("The district court should have determined whether the record established that a smartphone feature impacts customers' purchasing decisions."); *see also Apple II*, 695 F.3d at 1374–75 ("In other words, it may very well be that the accused product would sell almost as well without incorporating the patented feature. And in that case, even if the competitive injury that results from selling the accused device is substantial, the harm that flows from the alleged infringement (the only harm that should count) is not."). Berkovitz and Dr. Chapman, however, merely discuss Defendant's products generally; their analysis does not appear to be limited to harm specifically arising from a customer who chose Defendant's products to create a registration system that mirrored the '034 patent. *See Kidder Decl.* ¶¶27–52; *see, e.g.*, *Berkovitz Decl.* ¶43 (stating "[f]or example, in late April 2015, a customer questioned our pricing of proposed solutions, saying [Defendant] was charging 1/10th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

the price for a 'very similar service,'" without identifying any of the proposed solutions or services); *Chapman Decl.* ¶37 (stating that Defendant's launch of Lookup eliminated technological differentiation between Plaintiff and Defendant's products, without acknowledging that Lookup has non-infringing uses). The Court is therefore skeptical that the causal nexus requirement is met.

Finally, the Court notes that there are several others in the market offering similar services as Plaintiff and Defendant. *See Kidder Decl.* ¶¶71–84. Although Berkovitz disputes that these are actually competitors, *see Berkovitz Supp. Decl.* ¶¶19–21, and the Federal Circuit has held that it is error to find that "the presence of additional competitors, without more, cuts against a finding of irreparable harm," *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011), the Court finds that this nonetheless weighs against Plaintiff's claim of irreparable harm.

### ii. Inadequacy of Money Damages

Even assuming that Plaintiff's evidence is sufficient to show a causal nexus, it still must show that money damages are an inadequate remedy. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006); *see also Nano-Second Tech. Co. v. Dynaflex Int'l*, No. CV 10-9176 RSWL MANX, 2011 WL 4502025, at *4 (C.D. Cal. Sept. 28, 2011) ("Plaintiff has not proffered any evidence to show how future loss of revenue and market share cannot be compensated with money damages."). The Court believes that Plaintiff has failed to make this showing as well.

Plaintiff relies almost entirely on Dr. Chapman, who opines that monetary damages are inadequate because the harm from the loss of sales and cross-sales, price erosion, and damage to reputation cannot be determined with sufficient accuracy. *Chapman Decl.* ¶¶64–84. Although such harms can be uncompensable monetarily, *see, e.g.*, *Apple IV*, 2015 WL 5449721, at *8–9, they are not inherently so, *see, e.g.*, *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991). Dr. Chapman's analysis, which is somewhat generic and cites repeatedly to the Berkovitz declaration, does not convince the Court that the harm here is so unquantifiable that money damages would be insufficient. Moreover, as noted previously, the Court finds that the Chapman declaration does not adequately distinguish between sales of Defendant's products that are motivated by the ability to use them to infringe and sales of Defendant's products generally. *See* Section III.B.*i.*, *supra*. Thus, Dr. Chapman's sweeping view of irreparable damages does not accurately represent the actual harm that Plaintiff has or will experience.

The Court therefore finds that Plaintiff has not satisfied this *Winter* factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

C.   Balancing of Hardships and Public Interest

The parties' briefing gives little attention to the third and fourth *Winter* factors. *See Mot.* 16–17; *Opp.* 23–25; *Reply* 11–12. Plaintiff argues that the balance of hardships is in its favor because its patent, which represents its core technology, is being infringed and "[a]ny hardship to [Defendant] from infringing and inducing others to infringe [Plaintiff]'s patent is its own doing." *Mot.* 16. This, however, is not the appropriate test. *See Hybritech*, 849 F.2d at 1457 ("The district court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted."). In its Reply, Plaintiff states that it has narrowed its injunction to solely prohibit cross-selling of Lookup and Authy, *compare* Dkt. #23-13 ([Proposed] Preliminary Injunction Order), *with* Dkt. #62-12 ([Revised Proposed] Preliminary Injunction Order), which Defendant claims it already does not do, *see Reply* 11 (citing *Schaffer Decl.* ¶18), so Defendant would face minimal harm, *id.*; *see Apple IV*, 2015 WL 5449721, at *9 (finding that a narrowly tailored injunction can tilt the balance of hardships toward the plaintiff). Although the Court believes that Plaintiff is overstating the simplicity of complying with its revised proposed injunction, the Court believes that this *Winter* factor marginally favors Plaintiff.

A similar analysis applies to the public-interest prong. Plaintiff states that the public interest favors patent rights. *Mot.* 16–17. This ignores that the public is also benefitted by access to products and services, which could be impinged by an improper injunction. *See Apple III*, 735 F.3d at 1372–73. The Court, however, again finds that the narrow scope of the revised proposed injunction marginally weighs marginally in favor of Plaintiff.

D.   Summary

The Court finds that Plaintiff does not satisfy the first two *Winter* factors because it has not shown that it is likely to succeed on the merits or that it will suffer irreparable harm that cannot be compensated by money damages. Although the Court finds that the final two *Winter* factors marginally favor Plaintiff, this is insufficient for the "extraordinary" remedy of a preliminary injunction. *See Winter*, 555 U.S. at 20.

Nor does the "sliding scale" test save Plaintiff. That test only applies if "serious questions" going to the merits are raised, the balance of hardships "tips sharply" in Plaintiff's favor, and the other *Winter* factors are met. *See Alliance*, 632 F.3d at 1131–32. Here, none of those factors exist.

IV.   Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | No. CV 15-3240 PSG (SSx) | Date | October 19, 2015 |
|---|---|---|---|
| Title | TeleSign Corp. v. Twilio, Inc. | | |

The Court therefore DENIES Plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED.**