COOLEY LLP
THOMAS J. FRIEL, JR. (80065)
(TFRIEL@COOLEY.COM)
REUBEN H. CHEN (228725)
(RCHEN@COOLEY.COM)
CARRIE J. RICHEY (270825)
(CRICHEY@COOLEY.COM)
DENA CHEN (286452)
(DCHEN@COOLEY.COM)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

WAYNE O. STACY (*admitted pro hac vice*)
(WSTACY@COOLEY.COM)
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021
Telephone:   (720) 566-4000
Facsimile:    (720) 566-4099

Attorneys for Defendant Twilio Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TELESIGN CORPORATION, | Case No.  2:15-cv-03240-PSG-SS |
|---|---|
| Plaintiff, | **DEFENDANT TWILIO INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS THAT THE PATENTS-IN-SUIT ARE INVALID UNDER 35 U.S.C. § 101** |
| v. | |
| TWILIO INC., | |
| Defendant. | Date:    March 7, 2016<br>Time:    1:30 p.m.<br>Dept.:    880<br><br>Honorable Philip S. Gutierrez<br><br>JURY TRIAL DEMANDED |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 7, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez in Courtroom 880 of the United States District Court for the Central District of California, Western Division, located at 255 East Temple Street, Los Angeles, California, 90012-3332, Defendant Twilio, Inc. ("Twilio") will move and hereby does move as follows.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 23, 2015.

**MOTION**

Defendant Twilio hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings that U.S. Patent No. 7,945,034, U.S. Patent No. 8,462,920, and U.S. Patent No 8,687,038 are invalid under 35 U.S.C. § 101.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the supporting declaration and exhibits filed herewith, the pleadings, records, and other papers on file in this action, and upon such further evidence or argument as may be presented at or before the hearing on this Motion.

Dated:  January 5, 2016                              Respectfully Submitted:

                                                                   COOLEY LLP
                                                                   THOMAS J. FRIEL, JR. (80065)
                                                                   REUBEN H. CHEN (228725)
                                                                   CARRIE J. RICHEY (270825)
                                                                   WAYNE O. STACY (*pro hac vice*)


                                                                   By:/s/ Wayne O. Stacy
                                                                   Wayne O. Stacy

                                                                   Attorneys for Defendant Twilio Inc.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     LEGAL BACKGROUND .............................................................................. 2

        A.   The Law of Patent Eligibility After Alice ............................................ 2

        B.   Patent Eligibility Is a Threshold Issue Appropriately Decided on
             a Rule 12(c) Motion for Judgment on the Pleadings ........................... 3

III.    THE '034 PATENT IS INVALID UNDER 35 U.S.C. § 101 ......................... 4

        A.   Factual Background for the '034 Patent ................................................ 4

             1.   The '034 Patent Claims ............................................................ 4

             2.   The '034 Patent Specification .................................................. 5

             3.   '034 Patent File History ............................................................ 6

             4.   State of the Art in 2005 ............................................................ 7

        B.   Alice Step 1:  Claim 1 of the '034 Patent Is Directed to an
             Abstract Idea ........................................................................................ 8

        C.   Alice Step 2: The Asserted Claims are Not Patent-Eligible
             Applications of the Abstract Idea ...................................................... 13

        D.   Claims 1 Is Representative of All Other '034 Patent Claims ............. 17

IV.     THE '920 AND '038 PATENTS ARE INVALID UNDER 35
        U.S.C. § 101 .......................................................................................... 22

        A.   Factual Background for the '920 and '038 Patents ............................ 22

             1.   The '920 and '038 Patent Claims ........................................... 22

             2.   The '920 and '038 Patent Specification .................................. 24

             3.   The '920 and '038 Patent File Histories ................................. 24

        B.   Alice Step 1:  Claim 1 of the '920 Patent Is Directed to an
             Abstract Idea ...................................................................................... 25

        C.   Alice Step 2: The Asserted Claims are Not Patent-Eligible
             Applications of the Abstract Idea ...................................................... 29

        D.   Claim 1 of the '920 Patent Is Representative of All Other '920
             Patent Claims and All '038 Patent Claims ......................................... 33

V.      THE VALIDITY OF THE PATENTS-IN-SUIT IS RIPE FOR
        DECISION .......................................................................................... 39

VI.     CONCLUSION .......................................................................................... 40

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice v. CLS Bank*
134 S. Ct. 2347 (2014) ................................................................................*passim*

*Accenture Global Servs. v. Guidewire Software, Inc.,*
728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 3

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co.,*
687 F.3d 1266 (Fed. Cir. 2012) ........................................................ 16, 33

*In re Bilski,*
545 F.3d 943 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos,* 561 U.S. 593
(2010)..............................................................................................*passim*

*Bilski v. Kappos,*
130 S. Ct. 3218 (2010) ........................................................................ 10, 28

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014) .................................................. 3, 15, 30

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,*
No. 2:13-cv-07245-MRP-JEM, 2014 WL 5661290 (C.D. Cal. Nov.
3, 2014)............................................................................................... 2

*CMG Financial Servs., Inc. v. Pac. Trust Bank, F.S.B.,*
50 F. Supp. 3d 1306, 1325 (C.D. Cal. 2014)................................... 11, 29

*Cogent Medicine, Inc. v. Elsevier,*
No. C-13-4479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014)
(Whyte, J.) ........................................................................................ 4

*Comcast IP Holdings v. Sprint Communications,*
No. 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014).............. 14, 15, 30

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014) ..............................................................*passim*

*Cyberfone Sys, LLC. v. CNN Interactive Group, Inc.,*
558 Fed. App'x. 988 (Fed. Cir. 2010) .............................................. 15, 30

Cooley LLP
Attorneys At Law
San Francisco

ii.

**DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS**

**TABLE OF AUTHORITIES**
(continued)

Page

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................. 11, 28

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) .................................................. 15, 30

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................ 3

*Enfish, LLC v. Microsoft Corp.*,
  56 F. Supp. 3d 1167, 1182 (C.D. Cal. 2014).................................... 1, 2

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 ................................................................................ 15

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) ...................................... 40

*Mayo Collaborative Services v. Prometheus Laboratories*,
  628 F. 3d 1347 ........................................................................*passim*

*McRO, Inc. v. Sega of Am.*,
  No. 12-cv-10327, 2014 WL 4749601 (C.D. Cal. Sept. 22, 2014) ........ 3

*Mortgage Grader, Inc. v. Costco Wholesale Corp.*,
  No. SACV-13-00043-AG, 2015 WL 778125 (C.D. Cal. Jan. 12,
  2015) ........................................................................................ 11, 29

*Open Text S.A. v. Alfresco Software Ltd.*,
  No. 13-cv-04843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ........ 3

*Pragmatus Tel., LLC v. Genesys Tel. Labs., Inc.*,
  No. 14-CV-26-RGA, 2015 WL 4128963 (D. Del. July 9, 2015)......... 15, 30

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) .................................................. 16, 33

*In re TLI Comm'ns LLC Patent Lit.*,
  87 F. Supp. 3d 773 (E.D. Va. Feb. 6, 2015)................................. 11, 29

Cooley LLP
Attorneys At Law
San Francisco

iii.

TITLE
2:15-cv-03240-PSG-SS

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

*Ultramercial, Inc. v. Hulu, LLC,*
    722 F.3d 1335 (Fed. Cir. 2013) ....................................................... 3, 39

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) .......................................................*passim*

**Statutes**

35 U.S.C.
    § 101............................................................................................*passim*
    § 103 ............................................................................................. 25, 31

**Other Authorities**

Federal Rule of Civil Procedure 12(c) ........................................................ 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

TITLE
2:15-CV-03240-PSG-SS

## I.   INTRODUCTION

The Supreme Court's recent decision in *Alice Corporation v. CLS Bank* marked a major shift in the law regarding patent-eligible subject matter.  As courts in this district have already recognized, many patents were drafted for an "age of patent law that no longer exists."  *See Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1182 (C.D. Cal. 2014).  The three patents in this case are from that age that no longer exists.

District courts have been left to clean up the patents improperly granted by the Patent Office.  And they have done so aggressively—granting more than 70% of pre-trial motions to invalidate patent claims under § 101.  (*See, e.g.*, Ex. 1 at 1; Ex. 2 at 1.)  Improperly granted patents have fared no better at the appellate level.  The Federal Circuit invalidated patent claims in 15 of its first 16 post-*Alice* decisions.  (Ex. 3 at 1.)

TeleSign's three patents fall squarely within the categories of patents that these courts are holding invalid.  These three patents do nothing more than claim an abstract idea implemented with ordinary technology.

For example, TeleSign's '034 patent, which issued three years before *Alice,* claims the abstract idea of using a telephone number to authenticate and register a user.  During prosecution, the Examiner twice rejected the proposed claims for failing to claim patentable subject matter even under the pre-*Alice* standard.  In response, TeleSign used a pre-*Alice* strategy of incorporating conventional technology into the claims to sway the Examiner.  In particular, TeleSign amended the claims to require (1) **electronically** searching a database; and (2) sending a verification message and registering the user **over a communication network**.  But under *Alice*, these added limitations are now insufficient to transform an abstract idea into a patent-eligible claim.  These claims would never have issued in a post-*Alice* world and should be invalidated now.

The other two patents-in-suit—the '920 and '038 patents—claim the abstract

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1   idea of using a telephone number to confirm the identity of a previously registered

2   user. The claims link this abstract idea to nothing more than conventional

3   telephones and web sites. Adding conventional technology to an abstract idea no

4   longer saves a patent. The claims of these patents, like those of the '034 patent, fail

5   the *Alice* test and are invalid.

6       By addressing the *Alice* question at the pleading stage, the Court can resolve

7   all issues prior to the parties and the Court investing significant resources.

8   **II.   LEGAL BACKGROUND**

9       **A.   The Law of Patent Eligibility After *Alice***

10      In *Alice v. CLS Bank*, the Supreme Court confirmed the two-part test for

11  identifying patent claims directed to ineligible subject matter.  134 S. Ct. 2347,

12  2355 (2014) (citing *Mayo*, 132 S. Ct. at 1296-97).  First, the court must determine

13  whether the claims are directed to one of the patent-ineligible concepts—laws of

14  nature, natural phenomena, or abstract ideas.  *Id.*  If so, the court proceeds to the

15  second step, and determines whether the claims "contain[] an 'inventive concept'

16  sufficient to 'transform' the claimed abstract idea into a patent-eligible application."

17  *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).  Step one is a "'quick look'

18  test, the purpose of which is to identify a risk of preemption and ineligibility."

19  *Enfish*, 56 F. Supp. at 1173.  If a claim's purpose is abstract, the court proceeds to

20  step two, and takes a closer look at the specific elements of the claims.  *Id.* at 1174;

21  *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014

22  WL 5661290, at *13 (C.D. Cal. Nov. 3, 2014).

23      The required technological limitations must appear in the patent <u>claims</u>

24  themselves.  Like other requirements for patentability, the § 101 analysis looks to

25  individual claims, not a patent as a whole.  *See Alice*, 134 S. Ct. at 2355.   It is

26  generally irrelevant whether a patent's <u>specification</u> describes inventive,

27  technological limitations.   The question is whether each claim contains such

28  limitations and thereby restricts itself to patent-eligible subject matter.  *See*

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013).

All limitations in a particular claim need not be abstract. A patent claim satisfies the first step of the two-part test if "the concept embodied by the majority of the limitations" describes an abstract idea. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("*Ultramercial III*") (holding that "[a]lthough certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content"). In contrast to a purely abstract idea, a particular application of an idea may be patentable. However, a specific application of an otherwise unpatentable idea is only patentable if the claims add "significantly more." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

## B. Patent Eligibility Is a Threshold Issue Appropriately Decided on a Rule 12(c) Motion for Judgment on the Pleadings

Whether a patent claims patent-eligible subject matter under § 101 is a "threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos,* 561 U.S. 593 (2010); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012). Many courts have held that the determination of patent eligibility can be made on the pleadings. *See, e.g., Ultramercial III*, 772 F.3d 709 (12(b)(6) dismissal); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (judgment on the pleadings); *McRO, Inc. v. Sega of Am.*, No. 12-cv-10327, 2014 WL 4749601 (C.D. Cal. Sept. 22, 2014) (judgment on the pleadings); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) (12(b)(6) dismissal); *Cogent Medicine, Inc. v. Elsevier*, No. C-13-4479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) (Whyte, J.) (12(b)(6) dismissal). A § 101 determination need not wait for formal claim construction proceedings. *See Content Extraction & Transmission LLC v. Wells*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

*Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").

## III.   THE '034 PATENT IS INVALID UNDER 35 U.S.C. § 101

At its core, the '034 patent relates to the concept of authentication (*i.e.*, verifying a person's identity) using a phone number.  (*See* D.I. 1-1, '034 patent, Title, Abstract.)   The specification reflects this, noting that authentication is "fundamental" (*id.*, 1:30-31) and emphasizing the importance of verifying a website user's phone number (*id.*, 1:64:2-2).  Because the claims of the '034 patent merely implement this abstract idea using a modern telephone system—by requiring a "communications network" and an "electronic" determination using a database— they fail to add an inventive concept sufficient to transform the abstract concept into patent-eligible subject matter.

### A.   Factual Background for the '034 Patent

The '034 patent, titled "Process for Determining Characteristics of a Telephone Number," was filed on October 31, 2005, and issued on May 17, 2011. The '034 patent relates to a method for verifying a website user's identity based on the user's telephone number.  ('034 patent, 1:7-11.)

#### 1.   The '034 Patent Claims

In its Amended Complaint, TeleSign refers specifically only to independent claim 1 and dependent claims 4 and 6 of the '034 patent.  Those claims recite the following limitations:

1. A process for telephonically registering a user over one or more communication networks through determining characteristics of a telephone number, comprising the steps of:

**receiving a telephone number**;

**electronically determining** the type of phone, the phone carrier and geographic characteristics associated with the telephone number;

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

**connecting to a telephone** associated with the telephone number through at least one of the communication networks;

**communicating a verification message** with the telephone over at least one of the communication networks; and

**registering the user** through at least one of the communication networks based on the type of phone, the phone carrier, the geographic characteristics associated with the telephone number and the verification message.

4. The process of claim 1, wherein the determining the **phone type characteristic** comprises determining whether the telephone number is associated with a landline telephone, cellular telephone, or a voice over internet protocol telephone.

6. The process of claim 1, wherein determining the **geographic characteristics** includes the step of determining at least one of the time zone, country, state, county, city, zip code and metro area of the phone number.

('034 patent, cls. 1, 4, 6 (emphases added).)  Thus, the '034 patent claims require "electronically determining" certain characteristics of a telephone number, sending a "verification message" to the telephone number, and "registering the user" based on the characteristics of the telephone number and the verification message.

## 2.   The '034 Patent Specification

The '034 patent acknowledges that requiring website users to identify themselves was well known at the time the patent was filed in 2005.  ('034 patent, 1:14-18.)   The patent also acknowledges that verifying a user's identity was "fundamental."   (*Id*., 1:30-34 ("Authentication is fundamental to every Internet transaction.  Individuals and businesses who wish to engage in trade online must authenticate themselves by reliably establishing their identity, and presenting credentials as proof of that identity.").)

The specification characterizes the problem addressed by the purported

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

invention as follows:

> [T]here is a continuing need for a method to verify a registrant's identity using the registrant's telephone number.  There is also a continuing need to obtain information and characteristics of a telephone number to determine if the information provided is fraudulent.

(*Id.*, 1:64-67.)  The '034 patent's solution is "a process for verifying an online registration utilizing a telephone connection separate from the online connection in order to verify the identity of a registrant, . . . , as well as a process for determining characteristics of a telephone number." (*Id.*, 3:35-40.)

### 3.     '034 Patent File History

During prosecution of the '034 patent, the Patent Office twice rejected all claims as directed to non-statutory subject matter under 35 U.S.C. § 101.  The Examiner initially rejected the pending claims because they were not tied to an apparatus or machine.  (Ex. 4 at 4 ('034 patent file history 11/5/09 office action).) In response, the applicant amended the claims "to clarify that the determination of the phone number characteristics are used to telephonically register a user application ***over a telephone communication network***." (*Id*. at 14 (2/3/10 office action response ) (emphasis added).)

In a subsequent office action, the Patent Office again rejected the claims under § 101, at least in part because they were directed to a mental process:

> While the instant claims recite a series of steps or acts to be performed, the claim neither transforms underlying subject matter nor is positively tied to another statutory category that accomplishes the claimed method steps, and therefore does not qualify as a statutory process. ***For example the process to register a user including steps of receiving, determining, connecting and registering is of sufficient***

Cooley LLP
Attorneys At Law
San Francisco

6.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

*breadth that it would be reasonably interpreted as a series of steps completely performed mentally, verbally or without a machine.*

(*Id*. at 28 (10/14/10 office action ) (emphasis added).)

To overcome this second § 101 rejection, the applicant amended the claims for a second time, to require (1) that the "communicating" and "registering" steps occur over "at least one of the communication networks;" and (2) that the determining step be performed "electronically." (*Id*. at 34-40 (12/23/10 office action response).)  In arguing that the amended claims satisfied the machine-or-transformation test of *Bilski*, the applicant explained that the amended claims "require[d] communication through one or more communication networks such that certain characteristics of the telephone can be determined electronically - and not simply mentally, verbally or without a machine." (*Id*. at 41 (12/23/10 office action response).)  In addition, the applicant emphasized that, with the addition of the word "electronically" to the "determining" limitation, "the claimed process is specifically tied to a particular apparatus - i.e. telephone communication devices/networks and *electronic databases*." (*Id*. (emphasis added).)

The claims were allowed following this second amendment to the claims. (*Id*. at 42-44 (3/11/11 Notice of Allowance).)  Thus, to overcome the Examiner's rejections under § 101, the applicant relied on the addition of two features to the claims that ultimately issued with the '034 patent:  (1) a telephone communication device/network; and (2) an electronic database.

### 4.    State of the Art in 2005

When the '034 patent was filed in 2005, the idea of verifying a user's telephone number was well known.  For many decades, telephone-related information, such as the name, address, and phone number associated with a particular telephone line, had been stored in various directories such as phone books. (*See, e.g.*, Ex. 5 (Wikipedia entry for "telephone directory").)  Phone books from certain eras contained only landline phone numbers (*see, e.g.*, '034 patent,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1:46-49), and were published by the telephone service provider responsible for a particular service area. (*See, e.g.*, Ex. 5.)  For example, Pacific Bell and the other "Baby Bells" published and distributed phone books for the geographic areas they served. (*See, e.g.*, *id.*; Ex. 6 (Wikipedia entry for "Regional Bell Operating Company").)  U.S. telephone directories were available online before 2005. (*See, e.g.*, Ex. 5.)

Looking up a name or phone number in a directory has long been a common practice.  In the past, the area code of a ten-digit phone number identified the general geographic region associated with a phone number, and the next three digits identified the telephone exchange that served that number. (*See, e.g.*, Exs. 7-8, (Wikipedia entries for "telephone prefix" and "telephone exchange", respectively).)  Since each exchange served a particular geographic area and was operated by a particular service provider (*e.g.*, one of the Baby Bells), one would know which phone book to use based on the phone number itself.  Thus, for a landline phone number, the phone book that lists that number typically identified not only the name and address associated with that number, but also the type of phone (*i.e.*, landline) and carrier (*i.e.*, the phone book publisher) associated with the number.

B.    *Alice* **Step 1:  Claim 1 of the '034 Patent Is Directed to an Abstract Idea**

The claims of the '034 patent are directed to the abstract idea of using a phone number to authenticate and register a user.  Representative claim 1 merely breaks up this abstract idea into a series of basic steps.  *See Ultramercial III*, 772 F.3d at 714.  Stripped of its generic technology components, there is nothing more than the idea of looking up the user's telephone number in a directory to verify address-like information and then calling the number to confirm the owner's identity.  As the hypothetical below makes clear, other than the conventional steps

Cooley LLP
Attorneys At Law
San Francisco

8.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

of communicating by phone over a network and searching a database, every limitation of claim 1 can be performed solely by human activity:

| '034 patent, claim 1 | Human activity |
|---|---|
| A process for telephonically registering a user over one or more communication networks through determining characteristics of a telephone number, comprising the steps of: | [Even if the preamble is limiting, it merely makes clear that the claim requires communication over a telephone network.] |
| receiving a telephone number; | Alice sends her phone number to Bob, for example in an application for a credit card or a library card.  Or Bob receives Alice's number from Caller ID. |
| electronically determining the type of phone, the phone carrier and geographic characteristics associated with the telephone number; | Bob looks up Alice's phone number in a traditional phone book to see Alice's address.<br>As discussed in Section III.A.4 above, Bob knows the carrier and geographic area associated with Alice's number (and thus which phone book to use) based on the area code and/or next three digits of Alice's number.  The phone book itself identifies the carrier who published it, for example Pacific Bell or Southwestern Bell, and lists only landline phone numbers. |
| connecting to a telephone associated | Bob calls Alice at the phone number she |

Cooley LLP
Attorneys At Law
San Francisco

9.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| | |
|---|---|
| with the telephone number through at least one of the communication networks; | provided. |
| communicating a verification message with the telephone over at least one of the communication networks; and | Bob asks Alice for the answer to a challenge question, such as the last four digits of her social security number, and Alice answers the question. |
| registering the user through at least one of the communication networks based on the type of phone, the phone carrier, the geographic characteristics associated with the telephone number and the verification message. | After confirming Alice's information and the last four digits of her social security number, Bob enters Alice's name in a register.  Bob could go a step further and grant Alice access to a resource, such as a financial account or local library. |

The only difference between the limitations of claim 1 and the long-practiced human activity that mirrors them is the use of an electronic database to look up the location, carrier, and type of phone associated with Alice's phone number.

Recent Supreme Court and Federal Circuit decisions leave no doubt that the idea claimed by the '034 patent—using a phone number to authenticate and register a user—is abstract.  In *Alice*, the Supreme Court held that fundamental principles for "organizing human activity" are abstract ideas.  *Alice*, 134 S. Ct. at 2356-57. Using a telephone number to verify a person's identity is a "longstanding commercial practice," and as such is a "method of organizing human activity."  *See id*.  The Court in *Bilski* invalidated claims for the use of a computer intermediary that allowed a consumer with a computer to perform the same task that "would presumably have been done by a human broker in the prior art."  *Bilski v. Kappos*, 130 S. Ct. 3218, 3218 (2010).  Even before *Alice*, the Federal Circuit found that

Cooley LLP
Attorneys At Law
San Francisco

10.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

claims for detecting credit card fraud using "Internet address" information (*e.g.*, IP addresses or e-mail addresses) were drawn to the abstract idea of "detecting credit card fraud based on information relating past transactions to a particular 'Internet address.'" *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

Various district courts also have held that ideas similar to those claimed in the '034 patent are abstract. For example, one court invalidated claims to a communication system that included a telephone unit and a server because the claims covered "the abstract idea of taking, organizing, classifying, and storing photographs." *In re TLI Comm'ns LLC Patent Lit.*, 87 F. Supp. 3d 773, 785 (E.D. Va. 2015). In this district, Judge Guilford recently found that claims enabling borrowers to anonymously shop for loans were directed to the abstract idea of "allowing users to assess their borrowing ability without revealing their identities to the lenders until they wish to do so." *Mortgage Grader, Inc. v. Costco Wholesale Corp.*, No. SACV-13-00043-AG, 2015 WL 778125, at *6 (C.D. Cal. Jan. 12, 2015). And this Court has held that the concept of "paying down a mortgage early when funds are available and borrowing funds as needed to reduce the overall interest charged by the mortgage" is an unpatentable abstract idea. *CMG Financial Servs., Inc. v. Pac. Trust Bank, F.S.B.*, 50 F. Supp. 3d 1306, 1325 (C.D. Cal. 2014).

The prosecution history further confirms that the '034 patent claims are directed to the abstract idea of using a telephone number to authenticate and register a user. As explained in Section III.A.3 above, the Patent Office twice rejected the claims under § 101. To overcome those rejections, the applicant amended the claims to add a database (indicated by the "*electronically* determining" element) and a communications network. As shown in the table below, these claim amendments simply added basic elements that were well known in the art by 2005:

Cooley LLP
Attorneys At Law
San Francisco

11.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| Claim 1 As Issued After December 23, 2010 Amendments |
|---|
| A process for telephonically registering a user **over one or more communication networks** through determining characteristics of a telephone number, comprising the steps of: |
| receiving a telephone number; |
| **electronically** determining the type of phone, the phone carrier and geographic characteristics associated with the telephone number; |
| connecting to a telephone associated with the telephone number **through at least one of the communication networks**; |
| communicating a verification message with the telephone **over at least one of the communication networks**; and |
| registering the user **through at least one of the communication networks** based on the type of phone, the phone carrier, the geographic characteristics associated with the telephone number and the verification message. |

Thus, for claim 1 as issued, the sole features the patentee added to overcome the second § 101 rejection were (1) the requirement of communication *over/through a communication network*; and (2) the requirement that various characteristics of a phone number be determined *electronically*. With respect to the first of these features, the applicant emphasized that the claimed process could not be performed without a telephone connected to a network. (Ex. 4 at 41 ('034 patent file history, 12/23/10 office action response).) As for the second of these two features, the applicant argued that the addition of the term "electronically" to the "determining" step required the use of an electronic database: "[T]he claimed process is specifically tied to a particular apparatus – i.e. telephone communication devices/networks and *electronic databases*." (*Id.* (emphasis added).) But, as explained in more detail in Section III.C below, *Alice* and its progeny—which were

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1  not decided until well after the Patent Office allowed the claims of the '034

2  patent—hold that the addition of basic elements like a network and a database are

3  insufficient to transform an abstract idea into a patent-eligible claim.

4      In short, the abstract idea of verifying a person's identity using a phone

5  number has been a "tool" in the "storehouse of knowledge" that is "free to all men

6  and reserved exclusively to none" at least since the introduction of the phone book.

7  *See Bilski*, 561 U.S. at 602.  TeleSign is not permitted to own that idea.  Thus, the

8  only question is whether the '034 patent claims "significantly more" than the

9  abstract idea itself.  It does not.

10  **C.  *Alice* Step 2: The Asserted Claims are Not Patent-Eligible**

11  **Applications of the Abstract Idea**

12      In the second step of the *Alice* analysis, the court must determine whether the

13  claims contain some additional "'inventive concept' sufficient to 'transform' the

14  claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357.

15  The '034 patent claims fail *Alice*'s second step because the claims do not contain

16  any such "additional features" sufficient "to ensure that the [claims] [are] more than

17  a drafting effort designed to monopolize the [abstract idea]."  *Id.* (quoting *Mayo*,

18  132 S. Ct. at 1297).

19      The claims of the '034 patent suffer from the same basic defect as those in

20  *Alice*.  The only "additional" limitations are basic features of a modern telephone

21  system, including (1) a communications network equipped to handle telephone calls

22  and data communications from various devices, including landline phones, mobile

23  phones, and VOIP phones; and (2) a database for storing various characteristics

24  associated with a particular telephone number.  But using a telephone network and

25  a database is far short of an "inventive concept sufficient to transform the claimed

26  abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357

27  (quoting *Mayo*) (internal quotes omitted).

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

To the contrary, these "additional" limitations in the claims were simply inherent features of modern telecommunications networks that were already in existence when the '034 patent was filed. The '034 patent itself acknowledges that, by 2005, modern telecommunications networks allowed for devices that are not tied to a particular physical location:

> [I]t has been found that with the advent of different telephone systems, such verification can still lead to access by fraudulent users. ***Aside from the plain old telephone service (POTS) which utilizes landline telephones, there now exist cellular phones, voice over internet protocol (VOIP) phones, etc.***

('034 patent, 1:44-49 (emphasis added).)

When all phones were landlines, one could verify the address associated with a particular phone number simply by looking up the caller's name and/or phone number in a telephone book. (*See, e.g.*, Ex. 5.) However, once networks began to include mobile and VOIP phones, a telephone number was no longer necessarily tied to a physical address. (*See, e.g.*, '034 patent, 1:46-61.) Accordingly, network operators looked to other identifying information associated with a particular phone number, such as its geographic location (equivalent to the address associated with a landline), type (which by 2005 included mobile or VOIP, instead of just landline), and carrier (instead of single carrier for a particular geographic area, users could then select from a variety of wireless and VOIP providers). (*See, e.g.*, Ex. 4 at 4-11 ('034 patent file history, 11/5/09 office action at 2-9, citing U.S. Patent No. 7,054,417 ("Casey")); Ex. 9 at 2:19-3:12, Fig. 1.) Authentication systems that relied on a verification code transmitted to a user's telephone were also well known. (*See, e.g.*, Ex. 4 at 18-25 ('034 patent file history, 4/26/10 office action at 2-9, citing U.S. Patent No. 6,934,858 ("Woodhill")); Ex. 10 at 8:5-9:9, Figs. 2A-B.)

Courts have repeatedly found that common networking features do not transform an abstract idea into a patent-eligible invention. In *Comcast IP Holdings*

Cooley LLP
Attorneys At Law
San Francisco

14.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

*v. Sprint Communications*, for example, the court held that generic references to a "telephony network" and an "application" were not sufficient to render the claimed "telephony network optimization method" patentable.  No. 12-205-RGA, 2014 WL 3542055, at *14-15 (D. Del. July 16, 2014) (finding claim invalid because it "merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks"); *see also Pragmatus Tel., LLC v. Genesys Tel. Labs., Inc.*, No. 14-CV-26-RGA, 2015 WL 4128963, at *12 (D. Del. July 9, 2015) (elements such as "automated call distribution system," "network service," "terminal," "data," and "Internet Protocol (IP) address" do not transform an abstract idea into "something more").  Other cases confirm that reciting generic elements like a database, telephone, or network does not make a claim patent-eligible.  *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. July 6, 2015) ("The recited elements, e.g., a database, a user profile . . . , and a communication medium, are all generic computer elements."); *Cyberfone Sys, LLC. v. CNN Interactive Group, Inc.*, 558 Fed. App'x. 988, 993 (Fed. Cir. 2010) ("The 'telephone' recited in claim 1 is not a specific machine, and adds nothing of significance to the claimed abstract idea."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network . . . is not even arguably inventive.").

The '034 patent can take no refuge in the Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)—the lone post-*Alice* decision in which the Federal Circuit has sustained a patent's validity under § 101. None of the '034 patent claims solve a challenge particular to the Internet, which the Federal Circuit found sufficient in *DDR Holdings*.  *See* 773 F.3d at 1257 ("[T]hese claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claimed solution is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1  necessarily rooted in computer technology in order to overcome a problem
2  specifically arising in the realm of computer networks.").

3       Further confirming that the '034 patent claims are not inventive is the fact
4  that the claimed verification process does no more than a human could do with a
5  telephone and a directory.  For example, a human operator ("Bob" in the
6  hypothetical shown in Section III.B above) can receive a phone number from a user
7  ("Alice" in the same hypothetical), look up that number in the directory to
8  determine various characteristics associated with the number, call the user at the
9  number provided, communicate a verification message to and receive a verification
10  message from the user over the phone, and then register the user by entering her
11  identity and/or other information in a ledger.  (*See* '034 patent, cl. 1; § III.B, *supra*.)

12       While it may be faster to automate the verification process described above,
13  there is nothing inventive about using a network or a database to simply do more
14  quickly or efficiently what a human could otherwise accomplish.  "To salvage an
15  otherwise patent-ineligible process, a computer must be integral to the claimed
16  invention, facilitating the process in a way that a person making calculations or
17  computations could not. . . . [T]he fact that the required calculations could be
18  performed more efficiently via a computer does not materially alter the patent
19  eligibility of the claimed subject matter."  *Bancorp Servs., L.L.C. v. Sun Life*
20  *Assurance Co.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012); *see also SiRF Tech., Inc. v.*
21  *Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the
22  addition of a machine to impose a meaningful limit on the scope of a claim, it must
23  play a significant part in permitting the claimed method to be performed, rather
24  than function solely as an obvious mechanism for permitting a solution to be
25  achieved more quickly, i.e., through the utilization of a computer for performing
26  calculations.").

27       In short, the recitation of generic networking technology in claim 1 of the
28  '034 patent is insufficient to transform the abstract idea of verifying a person's

Cooley LLP
Attorneys At Law
San Francisco

16.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

identity using a phone number into patent-eligible subject matter under *Alice*. Claim 1 is therefore invalid under § 101.

### D.     Claims 1 Is Representative of All Other '034 Patent Claims

The Federal Circuit has made clear that, for purposes of determining patent eligibility under *Alice*, it is sufficient to examine a subset of the claims as long as "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014) (noting that additional limitations in the other claims recite only "well-known, routine, and conventional functions").  In this case, as in *Content Extraction*, all other claims of the '034 patent are directed to the same abstract idea as representative claim 1: using a telephone number to authenticate and register a user.

Focusing first on the remaining independent claims, the only other independent claims in the '034 patent (claims 15 and 26) are method claims that, like claim 1, recite a "process for telephonically registering a user over one or more communication networks through determining characteristics of a telephone number." ('034 patent, 11:38-40, 12:40-42.)  This language from the preamble common to all three independent claims confirms that all three are directed to the same abstract idea discussed in Section III.B above.  In fact, as shown in the chart attached hereto as Appendix A, all elements recited in claims 15 and 26 are nearly identical to limitations recited in claim 1 and the claims that depend from it.  As such, claims 15 and 26 are "substantially similar" to claims 1 and thus are invalid under § 101 for the same reasons discussed in Sections III.B and C above.  *See Content Extraction*, 776 F.3d at 1348.

Turning next to the dependent claims, the table below lists the claims that depend from independent claim 1, along with the hypothetical human activity that corresponds to those claims:

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| '034 patent, claim 2 | Human activity |
|---|---|
| The process of claim 1, including the step of creating or providing access to an electronic database containing a plurality of telephone numbers, and characteristics of each of the telephone numbers. | As discussed in Section III.A.4 above, regional telephone service providers (such as the "Baby Bells") compile, publish, and distribute phone books that list phone numbers along with corresponding names and addresses. |
| **'034 patent, claim 3** | **Human activity** |
| The process of claim 2, including the step of querying the database to determine if the telephone number is within the database. | Bob checks to see if Alice's phone number is listed in the phone book. As discussed in Section III.A.4 above, Bob knows the carrier and geographic area associated with Alice's number (and thus which phone book to use) based on the area code and/or next three digits of Alice's number. |
| **'034 patent, claim 4** | **Human activity** |
| The process of claim 1, wherein the determining the phone type characteristic comprises determining whether the telephone number is associated with a landline telephone, cellular telephone, or a voice over internet protocol telephone. | Bob knows Alice's phone number is associated with a landline because traditional phone books list only landline numbers. |
| **'034 patent, claim 5** | **Human activity** |
| The process of claim 1, including the step | Bob knows Alice's phone number is |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| of determining whether the telephone number is a non-geographic telephone number, fixed voice over internet protocol telephone number, prepaid cellular telephone number, or a direct inward dialing or automatically forwarding telephone number. | associated with a landline (and therefore <u>not</u> associated with some other type of phone) because traditional phone books list only landline numbers. |
|---|---|
| **'034 patent, claim 6** | **Human activity** |
| The process of claim 1, wherein determining the geographic characteristics includes the step of determining at least one of the time zone, country, state, county, city, zip code and metro area of the phone number. | As discussed in Section III.A.4 above, traditional phone books identify the city, state, and street address associated with every listed phone number. |
| **'034 patent, claim 7** | **Human activity** |
| The process of claim 1, wherein the receiving step comprises using caller identification upon receiving a telephone number or obtaining the telephone number from a form. | Bob gets Alice's phone number either by using caller ID or by reading it off of a form. |
| **'034 patent, claim 8** | **Human activity** |
| The process of claim 1, including the step of creating a telephone connection by receiving or making a telephone call to determine at least one of: quality of connection, pitch and frequency of ring, how long the phone rings, and time to | When Bob calls Alice at the phone number she provided, he counts the number of rings before Alice answers. |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| establish a connection. | |
|---|---|
| **'034 patent, claim 9** | **Human activity** |
| The process of claim 1, including the step of informing a third party of the determined telephone number characteristics. | Bob sends Alice's phone number characteristics to a third party, such as a credit reporting agency or local library. |
| **'034 patent, claim 10** | **Human activity** |
| The process of claim 1, including the step of comparing the determined characteristics of the telephone number with previously provided corresponding verification information. | Bob compares the information he looked up in a phone book with information Alice previously provided, for example in an application for a credit card or library card. |
| **'034 patent, claim 11** | **Human activity** |
| The process of claim 1, including the step of denying or granting access to a web-site or system upon determining the characteristics of the telephone number. | After looking up Alice's information in a phone book, Bob grants Alice access to a resource, for example by issuing her a credit card or library card. |
| **'034 patent, claim 12** | **Human activity** |
| The process of claim 1, including the steps of providing an online registration form to a registrant and receiving an at least partially completed online registration form, including the registrant's telephone number. | Bob sends Alice a registration form, such as an application for a credit card or library card.  Alice fills in her telephone number and sends the form back to Bob. |
| **'034 patent, claim 13** | **Human activity** |

Cooley LLP
Attorneys At Law
San Francisco

20.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| The process of claim 12, including the steps of establishing a telephonic connection with the registrant through the registrant telephone number, communicating a registration code to the registrant, and receiving the registration code from the online registration form or a telephone verification system to permit access to the web-site or system. | Bob calls Alice to give her a confirmation number, and Alice fills in the confirmation number on the registration form before sending it to Bob. |
|---|---|
| **'034 patent, claim 14** | **Human activity** |
| The process of claim 2, including the step of adding a telephone number and determined telephone number characteristics to the database. | As discussed in Section III.A.4 above, regional telephone service providers (such as the "Baby Bells") add phone numbers and corresponding names and addresses to the phone books they compile, publish, and distribute. |

Just as with claims 1, these additional limitations recite only well-known, routine, and conventional elements of modern telecommunications networks that are insufficient to transform the abstract idea of using a phone number to authenticate and register a user into patent-eligible subject matter under § 101. *See Content Extraction*, 776 F.3d at 1349; § III.C, *supra*. And as shown in the chart attached hereto as Appendix A, the claims that depend from independent claims 15 and 26 include no additional limitations sufficient to change the analysis. Thus, because all claims in the '034 patent are substantially similar to claim 1 in that they recite little more than the same abstract idea, all claims of the '034 patent are invalid for the same reasons discussed in Sections III.B and C above.

Cooley LLP
Attorneys At Law
San Francisco

21.

**Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS**

**IV.    THE '920 AND '038 PATENTS ARE INVALID UNDER 35 U.S.C. § 101**

Similar to the '034 patent, the '920 and '038 patents relate to using a telephone number to confirm (or "re-verify") the identity of a previously registered user.  (*See* '920 patent, Abstract, claim 1.)  Because the claims of the '920 and '038 patents merely implement the abstract idea of reverification using a telephone system and the Internet—by requiring that a verification code be sent via a telephone connection and entered via a website—they fail to add an inventive concept sufficient to transform the abstract idea into patent-eligible subject matter.

**A.    Factual Background for the '920 and '038 Patents**

The '920 patent, titled "Registration, Verification and Notification System," was filed on October 5, 2006, and issued on June 11, 2013.  The '920 patent relates to a method for confirming a previously registered user's identity via telephone. (D.I. 1-2, '920 patent, 1:6-9.)

The '038 patent was filed as a continuation of the '920 patent on July 11, 2013—the same day the '920 patent issued—and issued on April 1, 2014.  The '038 patent shares the '920 patent's title ("Registration, Verification and Notification System") and written description.  Like the '920 patent, the '038 patent relates to confirming a previously registered user's identity via telephone.  (D.I. 1-3, '038 patent, 1:19-23.)

**1.    The '920 and '038 Patent Claims**

The '920 patent has only a single independent claim, which recites the following limitations:

1. A verification and notification process, comprising:

**receiving information** responsive to at least part of a registration form that is presented to the registrant on a web-site, the received information including at least one registrant electronic contact;

verifying the received registrant electronic contact, wherein verifying the received registrant electronic contact includes:

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

**establishing a first telephonic connection** with the registrant using the received registrant electronic contact;

**communicating a first communicated verification code** to the registrant through the first telephonic connection; and

**receiving a first submitted verification code** after it is entered by the registrant via the web-site and

**verifying the received registrant electronic contact** if the first submitted verification code is the same as the first communicated verification code;

**establishing a notification event** associated with the registrant;

**identifying an occurrence** of the established notification event; and

after identifying the occurrence of the established notification event, re-verifying the registrant electronic contact, wherein re-verifying includes:

**establishing a second telephonic connection** with the registrant using the verified registrant electronic contact;

**communicating a second communicated verification code** to the registrant through the second telephonic connection; and

**receiving a second submitted verification code** that is entered by the registrant via the web-site; and

**re-verifying** the received registrant electronic contact if the second submitted verification code is the same as the second communicated verification code.

('920 patent, cl. 1 (emphases added).)  Thus, claim 1 of the '920 patent requires verifying a website user's phone number by sending a "verification code" to the user's phone, and "re-verifying" the user's phone number in the same manner upon the occurrence of some specified triggering event.

The two independent claims of the '038 patent are similar to claim 1 of the '920 patent.  For example, claim 1 of the '038 patent is a method claim that is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

substantively identical to claim '920 patent.  The main difference between the two is that claim 1 of the '038 patent adds an express requirement that the claimed method be "implemented by a computing system."  Claim 13 of the '038 patent, the only other independent claim, merely claims a "non-transitory computer-readable storage medium" that stores the instructions for performing the method of claim 1.

### 2.    The '920 and '038 Patent Specification

Like the '034 patent, the specification shared by the '920 and '038 patents acknowledges that requiring website users to identify themselves was well known at the time the patent was filed, and that verifying a user's identity was "fundamental."  ('920 patent, 1:14-18, 1:30-34.)  The specification characterizes the problem addressed by the purported invention as follows:

> [T]here is a continuing need for a method of verifying a registrant's identity, such as through the registrant's telephone number.  There is also a continuing need for a method to notify a registrant, such as through the registrant's telephone number, or events which are established either by the individual registrant or the company through which the registrant is conducting services.

(*Id.*, 1:62-2:1.)  The '920 patent purports to solve this problem with "a process for verifying the identity of a registrant, and utilizing the verification and/or registration information to notify the registrant of predetermined events established by either the registrant or the business."  (*Id.*, 3:54-58.)

### 3.    The '920 and '038 Patent File Histories

During prosecution of the '920 patent, the Patent Office three times rejected as obvious all claims directed only to verifying a website registrant's identity by sending a verification code to the registrant's telephone.  (Ex. 11 at 6-28, 29-52, 72-80 ('920 patent file history, 6/29/11 Office Action, 2/3/12 Office Action, 2/13/13 Office Action, respectively).)  The applicant was forced to amend the claims to add a <u>second</u> verification process upon the occurrence of some specified event.  (*See id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1   at 53-71 & 81-89 (8/2/12 Amendment & RCE, 4/3/13 Amendment).)   Thus, to
2   overcome the Examiner's rejections under § 103, the applicant relied on the
3   repetition of the original verification process following the occurrence of a
4   specified event.

5        The prosecution history of the patents-in-suit confirms that telephone-based
6   authentication methods, including methods that rely on verification codes and
7   characteristics associated with a user's telephone number, were well known at the
8   time of the alleged inventions.  During prosecution of the '920 patent, for example,
9   the Examiner cited multiple prior art references that taught verifying the identity of
10  an Internet user based on verification codes provided to the user's telephone.  (*See*
11  *id.* at 7-8, 31; Ex. 10, (Woodhill); Ex. 12, U.S. Patent No. 8,024,567 ("Han").)  The
12  Examiner also noted that all of the following were well known in the art:

- Sending a confirmation code to a registrant via electronic message;
- Providing a telephone number for a registrant to call and a confirmation number for the registrant to enter via keypad;
- Comparing information provided by a registrant to information stored in a database;
- Calling a registrant's telephone number upon the occurrence of an event concerning her account; and
- Notifying a user of unauthorized access to her account.

21  (Ex. 11 at 10-27 ('920 patent file history, 6/29/11 Office Action).)  Based on the
22  prior art, the Examiner rejected all claims directed only to verifying a website
23  registrant's identity by sending a verification code to the registrant's telephone.  (*Id.*
24  at 6-28, 29-52, 72-80 (6/29/11 Office Action, 2/3/12 Office Action, 2/13/13 Office
25  Action).)   And as explained below, the patents-in-suit do nothing more than
26  implement abstract ideas using these conventional technologies.

27      **B.**   *Alice* **Step 1:  Claim 1 of the '920 Patent Is Directed to an Abstract**
28             **Idea**

Claim 1 of the '920 patent merely breaks up the abstract idea of using a telephone number to confirm the identity of a previously registered user into a series of basic steps. *See Ultramercial III*, 772 F.3d at 714.  Stripped of its generic components, there is nothing more than the idea of calling a website user's phone to verify the user's identity, and then doing the same thing again when there is a reason to do so.

As the hypothetical below makes clear, other than the conventional steps of communicating by phone over a network and entering information on a website, every limitation of claim 1 can be performed solely by human activity:

| '920 patent, claim 1 | Human activity |
| --- | --- |
| A verification and notification process, comprising: | [The preamble merely makes clear that the claimed process includes "verification" and "notification"] |
| receiving information responsive to at least part of a registration form that is presented to the registrant on a web-site, the received information including at least one registrant electronic contact; | While applying for a credit card, Alice sends her phone number to Bob. |
| verifying a received registrant electronic contact, wherein verifying the received registrant electronic contact includes: | [This language merely introduces the "verification" process described in the steps described below.] |
| establishing a first telephonic connection with the registrant using the received registrant electronic contact; | Bob calls Alice at the phone number she provided. |
| communicating a first communicated verification code to the registrant through | Bob asks Alice for the answer to a challenge question, such as the last |

Cooley LLP
Attorneys At Law
San Francisco

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| | |
|---|---|
| the first telephonic connection; and | four digits of her social security number. |
| receiving a first submitted verification code after it is entered by the registrant via the web-site and verifying the received registrant electronic contact if the first submitted verification code is the same as the first communicated verification code; | Alice answers with the four digits, and Bob confirms that Alice answered correctly. |
| establishing a notification event associated with the registrant; | Bob decides to follow up with Alice the first time she uses her new credit card. |
| identifying an occurrence of the established notification event; and | Bob recognizes that Alice has used her new credit card. |
| after identifying the occurrence of the established notification event, re-verifying the registrant electronic contact, wherein re-verifying includes: | Bob repeats the verification process, using the steps described below. |
| establishing a second telephonic connection with the registrant using the verified registrant electronic contact; | Bob calls Alice at the phone number she provided. |
| communicating a second communicated verification code to the registrant through the second telephonic connection; | Bob asks Alice for the answer to a challenge question, such as her birth date. |
| receiving a second submitted verification code that is entered by the registrant via the web-site; and | Alice answers with her birth date. |
| re-verifying the registrant electronic | Bob confirms that Alice answered |

| contact if the second submitted verification code is the same as the second communicated verification code. | correctly. |

The only difference between the limitations of claim 1 and the long-practiced human activity that mirrors them is Alice's use of a website to send her phone number to Bob and to enter the answers to Bob's challenge questions.

The '920 patent specification confirms that the concept of re-verifying a person's identity has long been applied to commercial transactions:

> The business may also elect to automatically or manually require consumers to reverify after initial verification. . . .  For example, this may be used to verify that the consumer can still be reached at the given telephone number.   This process may also occur when a consumer requests another consumer to be verified, or even if the consumer chooses to be reverified at certain intervals, for example, to rest assured that the system is tracking their account.  ('920 patent, 11:46-56.)

Verifying (or "re-verifying") a customer's identity is a "longstanding commercial practice," and as such is a "method of organizing human activity." *Alice*, 134 S. Ct. at 2356-57.  *See id.*   And under *Alice*, fundamental principles for "organizing human activity" are abstract ideas.  *See id.*

The concept of using a telephone to re-verify a website user's identity is similar to the abstract idea claimed in the '034 patent (using a telephone number to authenticate and register a user) and the abstract ideas held to be unpatentable in the cases discussed in Section III.B above.  *See, e.g.*, *Bilski v. Kappos*, 130 S. Ct. 3218, 3218 (2010) (use of a computer intermediary that allowed a consumer with a computer to perform the same task that "would presumably have been done by a human broker in the prior art"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1    F.3d 1366, 1372 (Fed. Cir. 2011) (detecting credit card fraud using "Internet

2    address" information); *TLI Comm'ns*, 87 F. Supp. 3d 773, 785 (E.D. Va. 2015).

3    ("the abstract idea of taking, organizing, classifying, and storing photographs");

4    *Mortgage Grader, Inc. v. Costco Wholesale Corp.*, No. SACV-13-00043-AG, 2015

5    WL 778125, at *6 (C.D. Cal. Jan. 12, 2015) ("allowing users to assess their

6    borrowing ability without revealing their identities to the lenders until they wish to

7    do so"); *CMG Financial Servs., Inc. v. Pacific Trust Bank, F.S.B.*, 50 F. Supp. 3d

8    1306, 1325 (C.D. Cal. 2014) ("paying down a mortgage early when funds are

9    available and borrowing funds as needed to reduce the overall interest charged by

10   the mortgage").  In short, the abstract idea of re-verifying a person's identity using

11   a phone number has been a "tool" in the "storehouse of knowledge" that is "free to

12   all men and reserved exclusively to none" at least since the introduction of the

13   phone book. *See Bilski*, 561 U.S. at 602.  Thus, just as with the '034 patent, the

14   only question is whether the '920 and '038 patents claim "significantly more" than

15   the abstract idea itself.  And just like the '034 patent, they do not.

16        **C.    *Alice* Step 2: The Asserted Claims are Not Patent-Eligible**

17             **Applications of the Abstract Idea**

18        The '920 and '038 patent claims fail *Alice*'s second step because they do not

19   contain "additional features" sufficient "to ensure that the [claims] [are] more than

20   a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S. Ct. at

21   2357 (quoting *Mayo*, 132 S. Ct. at 1297).  Those claims suffer from the same defect

22   as those in the '034 patent and in *Alice*.  The only "additional" limitations are a

23   telephone and a website.  But using a telephone to send information that is then

24   entered via a website is far short of an "inventive concept sufficient to transform the

25   claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357

26   (quoting *Mayo*) (internal quotes omitted).

27        As explained in Section III.C above, courts have repeatedly found that

28   common networking features do not transform an abstract idea into a patent-eligible

invention.  *See, e.g.*, *Comcast IP Holdings v. Sprint Communications*, No. 12-205-RGA, 2014 WL 3542055, at *14-15 (D. Del. July 16, 2014) (finding claim invalid because it "merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks"); *Pragmatus Tel., LLC v. Genesys Tel. Labs., Inc.*, No. 14-CV-26-RGA, 2015 WL 4128963, at *12 (D. Del. July 9, 2015) (elements such as "automated call distribution system," "network service," "terminal," "data," and "Internet Protocol (IP) address" do not transform an abstract idea into "something more"); *Cyberfone Sys, LLC. v. CNN Interactive Group, Inc.*, 558 Fed. App'x. 988, 993 (Fed. Cir. 2010) ("The 'telephone' recited in claim 1 is not a specific machine, and adds nothing of significance to the claimed abstract idea."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network . . . is not even arguably inventive.").

The Federal Circuit's decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) is just as inapplicable to these claims as it is to those of the '034 patent.  Although the '920 and '038 patent claims require that the user enter a verification code via a website, the challenge of verifying and re-verifying a user's identity is neither particular to the Internet nor rooted in computer technology.  *See DDR Holdings*, 773 F.3d at 1257 ("[T]hese claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

The prosecution history further confirms that there was nothing inventive about using a website registrant's telephone number to verify the registrant's identity.  As explained in Section IV.A.3 above, the Patent Office repeatedly rejected claims that included only a single verification step as obvious under 35 U.S.C. § 103.  To overcome those rejections, the applicant introduced a new claim

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

that added a <u>second</u> verification step. The table below makes clear that the verification process the Examiner found to be obvious is virtually identical to the verification process in the issued '920 patent claims that is simply repeated upon the occurrence of a specified event:

| '920 patent, cancelled claim 28 | '920 patent, claim 1 as issued |
|---|---|
| A verification and notification process, comprising: | A verification and notification process, comprising: |
| receiving information responsive to at least part of a registration form that is presented to the registrant on a web-site, the received information including a registrant electronic contact and at least part of a name or an address; | receiving information responsive to at least part of a registration form that is presented to the registrant on a web-site, the received information including at least one registrant electronic contact; |
| comparing the received information from the registration form to a database containing personal identifying information; and | [No corresponding step in claim 1 as issued.] |
| verifying a received registrant electronic contact by: | verifying a received registrant electronic contact, wherein verifying the received registrant electronic contact includes: |
| establishing a telephonic connection with the registrant using the received registrant electronic contact; | establishing a first telephonic connection with the registrant using the received registrant electronic contact; |
| communicating a verification code to the registrant through the first telephonic connection; and | communicating a first communicated verification code to the registrant through the first telephonic connection; and |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| | |
|---|---|
| receiving a verification code after it is entered by the registrant via the web-site and verifying the received registrant electronic contact if the received verification code is the same as the communicated verification code and the at least part of the name or the address is identified in the database containing personal identifying information. | receiving a first submitted verification code after it is entered by the registrant via the web-site and verifying the received registrant electronic contact if the first submitted verification code is the same as the first communicated verification code; |
| | **[After establishing and identifying a notification event "re-verifying" the "registrant electronic contact" using the same process described above.]** |

(*See* Ex. 11 at 54, 82 ('920 patent file history).)  In fact, the verification process in the rejected claim is <u>narrower</u> than the verification process in the issued claims because it requires verification of name and address information using a database, in addition to a verification code.  (*See id.*)  And rather than challenge the Examiner's conclusion that the verification process of amended claim 28 is obvious, the applicant chose to cancel that claim.  (*See id.* at 82, 87.)

Thus, since a single iteration of this verification process does not supply the "inventive step" required to transform the abstract idea into a patent-eligible claim, claim 1 of the '920 patent boils down to the following steps:  (1) use a conventional authentication process to verify a website user; (2) repeat that same conventional authentication process when a "notification event" occurs.  But, as explained in Section IV.B above, those steps amount to nothing more than the longstanding commercial practice of re-verifying a customer's identity.  *See Alice*, 134 S. Ct. at 2356-57.

Cooley LLP
Attorneys At Law
San Francisco

32.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

1      Moreover, similar to the '034 patent, the '920 and '038 patents claim a

2  process that does little more than a human could do with a telephone.  For example,

3  a human operator ("Bob" in the hypothetical shown in Section IV.B above) can

4  receive a phone number from a user ("Alice" in the same hypothetical), call the user

5  at the number provided, communicate a verification message to and receive a

6  verification message from the user over the phone, and then confirm that the

7  verification messages match.  (*See* '920 patent, cl. 1; § IV.B, *supra*.)  And as

8  explained in Section III above, while it may be faster to automate the re-verification

9  process described in the '920 patent, there is nothing inventive about using an

10  Internet-connected computer to do what a human could otherwise do.  *See Bancorp*

11  *Servs.*, 687 F.3d at 1278; *SiRF Tech.*, 601 F.3d at 1333.

12      In short, the recitation of generic networking technology or a conventional

13  authentication method in claim 1 of the '920 patent is insufficient to transform the

14  abstract idea of re-verifying a person's identity using a phone number into patent-

15  eligible subject matter under *Alice*.  Claim 1 is therefore invalid under § 101.

### D.    Claim 1 of the '920 Patent Is Representative of All Other '920 Patent Claims and All '038 Patent Claims

18      As explained in Section III.D above, it is not necessary to separately analyze

19  all claims as long as "the claims of the asserted patents are substantially similar in

20  that they recite little more than the same abstract idea."  *Content Extraction &*

21  *Transmission LLC v. Wells Fargo Bank, NA*, 776 F.3d 1343, 1348-49 (Fed. Cir.

22  2014).  In this case, as in *Content Extraction*, all other claims of the '920 patent and

23  all claims of the '038 patent are directed to the same abstract idea as representative

24  claim 1 of the '920 patent:  re-verifying a website user's identity via telephone.

25      The remaining claims of the '920 patent all depend from claim 1.  The table

26  below lists these dependent claims, along with the hypothetical human activity that

27  corresponds to each one:

28

Cooley LLP
Attorneys At Law
San Francisco

33.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| '920 patent, claim 2 | Human activity |
|---|---|
| The process of claim 1, wherein the at least one registrant electronic contact comprises at least one registrant telephone number. | [This claim merely makes clear that the contact information Alice sends to Bob includes Alice's phone number.] |

| '920 patent, claim 3 | Human activity |
|---|---|
| The process of claim 2, wherein telephonic connections are established through a registrant telephone number. | [This claim merely makes clear that when Bob calls Alice, he does so at the phone number Alice provided.] |

| '920 patent, claim 4 | Human activity |
|---|---|
| The process of claim 2 further comprising: notifying the registrant of the occurrence of the established notification event by establishing a telephonic connection with the registrant via a registrant electronic contact. | Bob calls Alice to tell her that her new credit card was used to make a purchase. |

| '920 patent, claim 5 | Human activity |
|---|---|
| The process of claim 4 wherein notifying the registrant comprises establishing a telephonic connection with the registrant via a registrant telephone number upon the occurrence of the established notification event. | Bob calls Alice to tell her that her new credit card was used to make a purchase. |

| '920 patent, claim 6 | Human activity |
|---|---|
| The process of claim 2, wherein establishing a first telephonic connection with the registrant comprises sending the registrant an electronic message using the registrant telephone number. | Instead of calling Alice at the phone number she provided, Bob sends her a text message. |

Cooley LLP
Attorneys At Law
San Francisco

34.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

| '920 patent, claim 7 | Human activity |
|---|---|
| The process of claim 6, wherein the electronic message includes the first communicated verification code or provides means to obtain the first communicated verification code. | Bob sends Alice a text message asking her for the answer to a challenge question, such as the last four digits of her social security number. |
| **'920 patent, claim 8** | **Human activity** |
| The process of claim 6, wherein the electronic message comprises a text message. | Instead of calling Alice at the phone number she provided, Bob sends her a text message. |
| **'920 patent, claim 9** | **Human activity** |
| The process of claim 8, wherein the text message is a short message service (SMS) message sent to a registrant's telephone or SMS-enabled device. | Instead of calling Alice at the phone number she provided, Bob sends her a text message. |
| **'920 patent, claim 10** | **Human activity** |
| The process of claim 6, wherein the electronic message comprises a voice message. | When Bob calls Alice, he leaves a message on her answering machine. |
| **'920 patent, claim 11** | **Human activity** |
| The process of claim 6, wherein communication of at least one of the communicated verification codes to the registrant is via an automated message, and the process further comprises: detecting an answering machine message; and delaying a predetermined amount of time before playing the automated message. | When Bob calls Alice, he hears her answering machine pick up, waits for the beep, and then leaves a message. |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| '920 patent, claim 12 | Human activity |
|---|---|
| The process of claim 11, wherein the automated message includes the at least one of the communicated verification codes. | Bob leaves Alice a message asking her for the answer to a challenge question, such as the last four digits of her social security number. |

| '920 patent, claim 13 | Human activity |
|---|---|
| The process of claim 1, wherein the website informs the registrant that an electronic message is being sent to the registrant via a registrant provided telephone number. | When Alice sends her phone number to Bob, she is informed that Bob will send her a text message. |

| '920 patent, claim 14 | Human activity |
|---|---|
| The process of claim 1, further comprising receiving an indication from the registrant indicating that the registrant telephone number requires an extension and an indication of whether a live operator will answer a call to the registrant telephone number. | When Alice sends her phone number to Bob, she includes her extension number and indicates that Bob should provide it to the operator who answers his call. |

| '920 patent, claim 15 | Human activity |
|---|---|
| The process of claim 14, wherein establishing a telephonic connection with the registrant comprises calling the registrant telephone number, playing an automated message directing the live operator to dial the extension, and pausing a predetermined amount of time, and wherein communicating a communicated verification code to the registrant comprises | [This claim merely automates the process of calling Alice's phone number, asking the operator to be connected to Alice's extension, waiting for Alice to answer, and then asking Alice for the answer to a challenge question, such as the |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

36.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| playing an automated message including the communicated verification code. | last four digits of her social security number.] |
|---|---|
| **'920 patent, claim 16** | **Human activity** |
| The process of claim 14, wherein establishing a telephonic connection with the registrant comprises calling the registrant telephone number, pausing a predetermined amount of time, automatically dialing the extension, and pausing a predetermined amount of time, and wherein communicating a communicated verification code to the registrant comprises playing an automated message including the verification code. | [This claim merely automates the process of calling Alice's phone number, waiting for a prompt to dial Alice's extension, dialing Alice's extension, waiting for Alice to answer, and then asking Alice for the answer to a challenge question, such as the last four digits of her social security number.] |
| **'920 patent, claim 17** | **Human activity** |
| The process of claim 1, further comprising comparing information provided by the registrant in the registration form to a database containing personal identifying information. | Bob looks up Alice's name in a phone book and compares the listed address with the address Alice provided on her credit card application. |
| **'920 patent, claim 18** | **Human activity** |
| The process of claim 17, wherein the personal identifying information includes at least one of: a name, a telephone number, an address, an email address, or a social security number. | Bob looks up Alice's name in a phone book and compares the listed address with the address Alice provided on her credit card application. |
| **'920 patent, claim 19** | **Human activity** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

| | |
|---|---|
| The process of claim 1, wherein the established notification event pertains to fraud associated with an account of the registrant. | Bob repeats the verification process the first time Alice's credit card is used in a foreign country. |
| **'920 patent, claim 20** | **Human activity** |
| The process of claim 1, wherein the established notification event is a request to access an account associated with the registrant. | Bob repeats the verification process when someone calls to check the balance on Alice's credit card. |
| **'920 patent, claim 21** | **Human activity** |
| The process of claim 1, wherein the established notification event is a transaction. | Bob repeats the verification process the first time Alice's credit card is used. |
| **'920 patent, claim 22** | **Human activity** |
| The process of claim 1, wherein the established notification event is a request to alter an account associated with the registrant. | Bob repeats the verification process when someone asks to change the password on Alice's credit card account. |

Just like claim 1, the additional limitations in the dependent claims recite only well-known, routine, and conventional elements of websites and telephone systems that are insufficient to transform the abstract idea of confirming a website user's identity into patent-eligible subject matter under § 101.  Accordingly, the dependent claims of the '920 patent are substantially similar to representative claim 1, and fail the *Alice* test for the same reasons. *See Content Extraction*, 776 F.3d at 1349; §§ IV.B-C, *supra*.

Claim 1 of the '920 patent is also representative of all claims of the '038

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

patent.  As noted in Section IV.A.1 above, the main difference between claim 1 of the '038 patent and claim 1 of the '920 patent two is that the former adds an express requirement that the claimed method be "implemented by a computing system." Claim 13 of the '038 patent, the only other independent claim, merely claims a "non-transitory computer-readable storage medium" that stores the instructions for performing the method of claim 1.  As shown in the chart attached hereto as Appendix B, the claims of the '038 patent are substantively identical to corresponding '920 patent claims and include no additional limitations sufficient to change the analysis.  Thus, because all claims in the '920 and '038 patents are substantially similar to claim 1 of '920 patent, all claims of the '920 and '038 patents are invalid for the same reasons discussed in Sections IV.B and C above.

## V.     THE VALIDITY OF THE PATENTS-IN-SUIT IS RIPE FOR DECISION

Defendant requests that the Court declare the Asserted Claims invalid now, at the pleadings stage, before TeleSign is allowed to further drain resources from the Court and from Twilio.  As explained in Section II.B above, many other courts have done the same.

Judge Mayer of the Federal Circuit recently highlighted the value of deciding the validity of an asserted patent early in litigation.  "[A]ddressing section 101 at the outset of litigation [has] a number of salutary effects," including "conserv[ing] scarce judicial resources," "provid[ing] a bulwark against vexatious infringement suits," and "protect[ing] the public" by "weeding out those patents that stifle innovation and transgress the public domain."  *Ultramercial III*, 772 F.3d at 718-19 (Mayer, J., concurring).  This Court should realize those benefits in this case by granting Defendant's motion to dismiss and joining the wave of courts across the country who have helped to "clear[] the patent thicket" by dismissing infringement cases based on facially invalid patents at the pleadings stage.  *Id*. at 719.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

39.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

## VI.   CONCLUSION

The claims of the patents-in-suit do no more than describe a problem, announce purely functional and generic steps that purport to solve that problem, and then recite standard operations to perform those steps without any "inventive concept" or anything "significantly more than" an abstract idea.   According to Judge Bryson of the Federal Circuit, sitting by designation in a case involving patent claims no less abstract and technologically vacuous than those at issue here, the problem with such patents is that they contribute nothing to the public store of knowledge while at the same time depriving the public of the benefits of the real work of true invention performed by someone else at a later date:

> [S]uch patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps.  The principal flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself.  As such, they represent little more than functional descriptions of objectives, rather than inventive solutions.  In addition, because they describe the claimed methods in functional terms, they preempt any subsequent specific solutions to the problem at issue.

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 845 (E.D. Tex. 2014) (citations omitted).  These words could have been written for this case, which deserves the same result.

Twilio respectfully request that the Court grant judgment on the pleadings that all claims of the '034, '920, and '038 patents are invalid under 35 U.S.C. § 101.

Cooley LLP
Attorneys At Law
San Francisco

40.

Defendant's Motion for
Judgment on the Pleadings
2:15-cv-03240-PSG-SS

Dated:  January 5, 2016                    Respectfully Submitted:

                                           COOLEY LLP
                                           THOMAS J. FRIEL, JR. (80065)
                                           REUBEN H. CHEN (228725)
                                           CARRIE J. RICHEY (270825)
                                           WAYNE O. STACY (*pro hac vice*)


                                           By:*/s/ Wayne O. Stacy*
                                           Wayne. O. Stacy

                                           Attorneys for Defendant Twilio Inc.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

41.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS

1

## CERTIFICATE OF SERVICE

2

3       The undersigned hereby certifies that all counsel of record who are deemed

4  to have consented to electronic service are being served with a copy of this

5
6  document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 5,

7  2016.

8  ***Attorneys for TeleSign Corporation***

9
   **Janet L. Hickson**
10 Shook Hardy Bacon  LLP
11 Jamboree Center
   5 Park Plaza Suite 1600
12 Irvine, California 92614
13 jhickson@shb.com

14 **Gary M. Miller**
15 Shook Hardy and Bacon LLP
   111 South Wacker Drive Suite 1500
16 Chicago, IL 60606
17 gmiller@shb.com

18 **Mary J. Peal**
19 **Jesse J. Camacho**
   Shook Hardy and Bacon LLP
20 2555 Grand Boulevard
21 Kansas City, MO 64108
   mpeal@shb.com
22 jcamacho@shb.com

23

24

25

26                                        */s/  Patrick R. Lenihan*
27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
2:15-CV-03240-PSG-SS